IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



FREDERICK J. ANDREWS,

    Plaintiff,

v.                                      Civil Action No. 3:17-cv-533

VICTOR L. TAYLOR, et al.,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on the Commonwealth of Virginia, Department of Social Services, Division of Child Support Enforcement ("DCSE")'s MOTION TO DISMISS (ECF No. 9) and the Chesterfield County Jail ("the Chesterfield Jail")'s MOTION TO DISMISS (ECF No. 14). For the following reasons, the motions will be granted but the dismissal shall be without prejudice.

**BACKGROUND**

In this action, Plaintiff Frederick J. Andrews, proceeding pro se, sues the Virginia DCSE and the Chesterfield Jail on claims arising out of Virginia child custody and support proceedings. Defendants move to dismiss the Amended Complaint (ECF No. 5) with prejudice.

**I.    Andrews' Factual Allegations**

Andrews alleges a variety of harms stemming from child custody and support proceedings. Andrews mainly claims that these

proceedings did not afford proper due process in revoking his parental rights, granting custody to others, and imposing child support obligations.

Andrews also asserts that he was harmed in other ways apparently related to these proceedings. He contends that he received sentences of incarceration in the Chesterfield County Jail and the Richmond City Jail and that he was fined on one occasion. Additionally, he avers that the DCSE and the Chesterfield County Sheriff's office "carried out an abuse of process against [him] and/or malicious prosecution by servicing a bad address" and that the "Richmond City Sheriff's Department carried out an abuse of process by servicing a subpoena" at a certain address. He also sets forth a lengthy list of injuries that he claims to have suffered as a result of the conduct of Defendants and others, such as: pain and suffering, suspension of his commercial driver's license, the loss of his apartment and memorabilia, being placed at risk of stroke or heart attack, the repossession of his vehicle, emotional distress, 18 years of bad credit, and being rendered unable to attend family events.

The Amended Complaint concludes by asserting that "historically the [DCSE], DCSE business partners- local courts in Richmond, Virginia, Chesterfield & Henrico County, local sheriff's offices and Judges Surrogates have been bias [sic] and consistent with violating [his] constitutional rights."

## II. Andrews' Claims & Prayer for Relief

After reviewing the Amended Complaint and Andrews' numerous (and often incomprehensible) filings, the Court concludes that Andrews seeks to assert a federal 42 U.S.C. § 1983 claim challenging, on due process grounds, the child custody and support proceedings, certain Virginia state statutes related to child custody and support, and his treatment by Defendants more generally. Additionally, although Andrews indicated in the Amended Complaint that the basis for jurisdiction is federal question, not diversity, he appears to raise state law claims, such as abuse of process and malicious prosecution.[1]

Andrews seeks as relief "that all DCSE cases be voided, debts removed, drivers license reinstated, punitive damages and monies paid to DCSE/Treasurer of Virginia refunded immediately." He enumerates actual damages, describes "Personal, Emotional, Family & Health Damages," and provides a calculation of punitive damages.

## III. Procedural History

Andrews filed the initial Complaint on August 1, 2017. It named ten defendants, including judges and sheriffs, as well as administrative agencies. By ORDER (ECF No. 2), the Court advised

---

[1] There is vague language touching on false imprisonment, intentional infliction of emotional distress, and trespass to chattels. But, there is no stated claim on any such grounds.

3

Andrews to file a complaint that did not proceed against the Richmond Sheriff and the judges, and otherwise "to assess what, if any claim, he may genuinely have against someone other than the judges and the Sheriff." The Amended Complaint named the Virginia DCSE, the Richmond City Jail, and the Chesterfield County Jail as defendants. DCSE and the Chesterfield Jail then filed their motions to dismiss.

**THE FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) & 12(b)(6) STANDARDS**

DCSE seeks to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and the Chesterfield Jail seeks to do so under Rule 12(b)(6). Def. DCSE's Br. 1; Def. Chesterfield Jail's Br. 1.

The principles governing Rule 12(b)(1) are well established:

> A party may file a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). If a court finds that it does not have subject matter jurisdiction over the case or controversy, it must dismiss the action. Of course, the plaintiff bears the burden of establishing that federal jurisdiction is proper.
>
> Challenges to subject matter jurisdiction may be made in two ways. First, a facial challenge to jurisdiction may be made by arguing that the complaint does not allege facts that permit the exercise of federal subject matter jurisdiction. If that type of challenge is raised, the court must assume that all facts alleged in the complaint are true. Second, the challenge can be made under the theory that the complaint's assertion of subject matter jurisdiction is not true. In that event, a court may consider evidence outside the pleadings.

4

Rashad v. Jenkins, 3:15-cv-655, 2016 WL 901279, at *3-4 (E.D. Va. Mar. 3, 2016) (citations omitted).

Rule 12(b)(6) motions are evaluated under the following standards:

> To survive a Rule 12(b)(6) motion to dismiss, a complaint must "provide 'enough facts to state a claim to relief that is plausible on its face.'" "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." A court "will accept the pleader's description of what happened . . . along with any conclusions that can be reasonably drawn therefrom," but "need not accept conclusory allegations encompassing the legal effects of the pleaded facts." "[Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)] and [Ashcroft v. Iqbal, 556 U.S. 662 (2009)] also made clear that the analytical approach for evaluating Rule 12(b)(6) motions to dismiss requires courts to reject conclusory allegations that amount to mere formulaic recitation of the elements of a claim and to conduct a context-specific analysis to determine whether the well-pleaded factual allegations plausibly suggest an entitlement to relief."

Rashad, 2016 WL 901279, at *4 (citations omitted).

Rules 12(b)(1) and 12(b)(6) share certain features. Under both Rules, "a court must typically construe the pleadings of a pro se plaintiff liberally," but it must still consider the "pleadings according to the standards developed under the Federal Rules of Civil Procedure." Harrison v. U.S. Social Sec. Admin., 3:13-cv-435, 2014 WL 29042, at *1 (E.D. Va. Jan. 2, 2014). And, in addition to the

complaint, courts may consider, <u>inter alia</u>, documents attached to the complaint, public records, and indisputably authentic documents that are central to the plaintiff's claims. See <u>Goines v. Valley Cmty. Servs. Bd.</u>, 822 F.3d 159, 165-66 (4th Cir. 2016); <u>Va. Elec. & Power Co. v. Peters</u>, 3:17-cv-259, 2018 WL 1425965, at *1 n.1 (E.D. Va. Mar. 22, 2018); <u>Weaver v. AEGON USA, LLC</u>, 4:14-cv-3436, 2015 WL 5691836, at *3 (D.S.C. Sept. 28, 2015); <u>Bland v. Fairfax Cnty.</u>, 1:10-cv-1030, 2011 WL 2580343, at *2 (E.D. Va. June 29, 2011).

**DISCUSSION**

DCSE argues that Andrews' action is barred by the Eleventh Amendment. Def. DCSE's Br. 6-7. The Chesterfield Jail similarly contends that state sovereign immunity precludes the abuse of process tort claim if the Court interprets Andrews' suit as against Chesterfield County. Def. Chesterfield Jail's Br. 6. The Court agrees with DCSE that Andrews' action against it is barred by Eleventh Amendment immunity, and it further holds that this immunity precludes Andrews' action against the Chesterfield Jail. This conclusion resolves Defendants' motions, so the Court need not consider all of Defendants' remaining assertions.[2]

---

[2] The Court makes two preliminary jurisdictional observations, however. First, DCSE's argument that the "domestic relations" exception to federal jurisdiction applies is misplaced. See Def. DCSE's Br. 5-6. That exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees." <u>Jones v.</u>

Jones, 206 F. Supp. 3d 1098, 1104 (E.D. Va. 2016) (citations omitted). And, it is only a "judicially implied limitation on the diversity jurisdiction; it has no generally recognized application as a limitation on federal question jurisdiction." United States v. Johnson, 114 F.3d 476, 481 (4th Cir. 1997). Here, Andrews primarily invokes federal question jurisdiction. Am. Compl. *4. Furthermore, although Andrews does raise state law claims, those claims do not appear to "arise[] solely from family relations law" or require the Court "to issue divorce, alimony, [or] child custody decrees." See Jones, 206 F. Supp. 3d at 1104-05 (citations omitted); see also id. at 1105 ("[T]he duty to abstain from malicious prosecution [and] from abuse of process . . . does not arise out of or require, in order to give rise to the duty, a . . . family relation." (quoting Cole v. Cole, 633 F.2d 1083, 1088 (4th Cir. 1980)). To the extent that Andrews does ask the Court, by way of his state law claims, "either to adjust family status or to establish duties under family-relations law or to determine whether or not such duties had been breached," of course the Court lacks jurisdiction. See Cole, 633 F.2d at 1089.

Second, although this issue was not raised by the parties, the Court notes that the Rooker-Feldman doctrine may be applicable. Under this doctrine, "lower federal courts generally do not have jurisdiction to review state-court decisions." Chien v. Grogan, 1:17-cv-358, 2017 WL 3381978, at *4 (E.D. Va. Aug. 3, 2017) (citations omitted), aff'd, 710 F. App'x 600, 600-01 (4th Cir. 2018) (per curiam). It "only applies where: '(1) the federal court plaintiff lost in state court; (2) the plaintiff complains of 'injuries caused by state-court judgments;' (3) the state-court judgment became final before the proceedings in federal court commenced; and (4) the federal plaintiff 'invit[es] district court review and rejection of those judgments.'" Id. (citations omitted). The Supreme Court and Fourth Circuit, however, have narrowed the doctrine in recent years. See Thana v. Bd. of License Comm'rs for Charles Cnty., 827 F.3d 314, 319-20 (4th Cir. 2016). For example, in Thana, the Fourth Circuit observed that Rooker-Feldman was not applicable because: (1) "the district court here was not called upon to exercise appellate jurisdiction over a final judgment from 'the highest court of a State in which a decision could be had'"; (2) the suit was "challenging the action[s] of a state administrative agency" ("that were reviewed in state court"), not "alleging injury caused by a state court judgment"; (3) Rooker-Feldman is categorically inapplicable to challenges to state administrative actions; (4) "[t]he state proceeding . . . was an agency-initiated proceeding, in which limited and deferential judicial review was afforded" and the courts had "no authority to award damages," which the plaintiff sought; and

7

I. **The Applicable Rule**

As a threshold matter, the Court considers the applicable rule under which to evaluate Eleventh Amendment immunity. As this Court has noted, that issue is unresolved but may not be necessary to determine:

> The Fourth Circuit has yet to decide whether courts should address Eleventh Amendment immunity under Rule 12(b)(1) or 12(b)(6). The trend in this District and other districts within this Circuit is toward considering Eleventh Amendment immunity under Rule 12(b)(1). Nevertheless, the distinction makes little practical difference when [a defendant's immunity argument is based on the] insufficiency of the pled facts rather than inaccuracy. In that situation, the analysis is the same under either rule: the Court accepts the pled allegations as true and construes them in a light most favorable to the plaintiff.

---

(5) the plaintiff "never sought to bypass the Supreme Court's appellate jurisdiction" but rather was in the process of appealing the judgments at issue. Id. at 316, 321-22 (citations omitted).

Here, Andrews seems to assert that child custody and support decisions were rendered without due process and that he was injured thereby. See Am. Compl. *9-10. He seeks as relief damages and "that all DSCE cases be voided, debts removed, drivers license reinstated . . . and monies paid to DCSE/Treasurer of Virginia refunded immediately." Am. Compl. *11. Aspects of his claim could theoretically fit the Rooker-Feldman model. But, the Amended Complaint and attached documents (as well as those proffered by DCSE) offer limited detail about the actions that Andrews is challenging and the circumstances relevant to Rooker-Feldman. See Am. Compl. *9-10; Am. Compl. Ex. A-FF; Def. DCSE's Br. Ex. 1-7. And, certain claims, such as the substantive due process and state law tort claims based on treatment by Defendants, fall outside the doctrine. The Court thus focuses on the Eleventh Amendment, which resolves all claims that do not come within the narrow confines of Rooker-Feldman.

8

Quigley v. McCabe, 2:17-cv-70, 2017 WL 3821806, at *2 (E.D. Va. Aug. 30, 2017) (citations omitted); see also Fleming v. Va. State Univ., 3:15-cv-268, 2016 WL 927186, at *1 n.4 (E.D. Va. Mar. 4, 2016), aff'd as modified on other grounds, 671 F. App'x 117, 118 (4th Cir. 2016) (per curiam).[3]

Here, DCSE raises its Eleventh Amendment immunity argument pursuant to Rule 12(b)(1), whereas the Chesterfield Jail invokes state sovereign immunity under Rule 12(b)(6). Def. DCSE's Br. 6-7; Def. Chesterfield Jail's Br. 6. However, neither Defendant alleges, as to these immunity arguments, that the factual allegations in the Amended Complaint are untrue. Def. DCSE's Br. 6-7; Def. Chesterfield Jail's Br. 6. Thus, the analysis will be the same under either Rule, and it is unnecessary to resolve which Rule is the proper procedural vehicle.

## II. The Eleventh Amendment

### A. The Basic Framework

The Fourth Circuit has described the standards governing Eleventh Amendment immunity in the following manner:

> Pursuant to the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of

---

[3] Moreover, as discussed below, the burden of establishing immunity would generally be placed on a defendant under either Rule. See Hutto v. S.C. Ret. Sys., 773 F.3d 536, 542-43 (4th Cir. 2014).

9

> the United States by Citizens of another State." The Supreme Court "has drawn on principles of sovereign immunity to construe the Amendment to establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." The States' immunity also extends to "state agents and state instrumentalities." "The Eleventh Amendment bar to suit is not absolute," however. There are three exceptions to that constitutional bar.
>
> First, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." . . . Second, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." . . . Third, "[a] State remains free to waive its Eleventh Amendment immunity from suit in a federal court."

Lee-Thomas v. Prince George's Cnty. Pub. Schs., 666 F.3d 244, 248-49 (4th Cir. 2012) (citations omitted).[4]

For a state entity to be protected by the Eleventh Amendment, it must be the case that, "'in [the entity's] operations, the state is the real party in interest,' in the sense that the 'named party

---

[4] Courts sometimes describe the exceptions differently. In Hutto, for instance, the court listed six exceptions: "(1) when a State consents to suit; (2) when a case is brought by the United States or another State; (3) when Congress abrogates sovereign immunity pursuant to Section 5 of the Fourteenth Amendment or pursuant to the Bankruptcy Clause; (4) when a suit is brought against an entity that is not an arm of the State; (5) when a private party sues a state official in his official capacity to prevent an ongoing violation of federal law; and (6) when an individual sues a state official in his individual capacity for ultra vires conduct." Hutto, 773 F.3d at 551.

10

[is] the alter ego of the state.'" Hutto v. S.C. Ret. Sys., 773 F.3d 536, 542 (4th Cir. 2014) (citations omitted). The Fourth Circuit's "Eleventh Amendment jurisprudence differentiates 'arms or alter egos of the state from 'mere political subdivisions of [the] State such as counties or municipalities,' which, though created by the state, operate independently and do not share the state's immunity.'" Lawson v. Union Cnty. Clerk of Court, 828 F.3d 239, 250 (4th Cir. 2016) (citations omitted). Courts analyze "four nonexclusive factors" in assessing whether an entity is an arm of the state:

> (1) whether any judgment against the entity as defendant will be paid by the State . . . (2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions; (3) whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns; and (4) how the entity is treated under state law, such as whether the entity's relationship with the State [is] sufficiently close to make the entity an arm of the State.

Id. (citations omitted).

### B. The Burden of Proof & Quasi-Exception

The Fourth Circuit has held that defendants bear the burden of proof as to Eleventh Amendment immunity. Hutto, 773 F.3d at 542-43; see also Lawson, 828 F.3d at 251. In its words: "Because a defendant otherwise protected by the Eleventh Amendment can waive its protection, it is, as a practical matter, structurally necessary to

11

require the defendant to assert the immunity. We therefore conclude that sovereign immunity is akin to an affirmative defense, which the defendant bears the burden of demonstrating." Hutto, 773 F.3d at 543. Thus, defendants generally must raise Eleventh Amendment immunity and establish that its requirements have been met.

Nevertheless, there appears to be a quasi-exception to this rule: courts may raise and decide the Eleventh Amendment issue sua sponte in a proper case, notwithstanding the Fourth Circuit's allocation of the burden of proof. It is a well-established principle that a court may consider this issue sua sponte. See McCray v. Md. Dep't of Transp., 741 F.3d 480, 483 (4th Cir. 2014) ("Our case law is clear that 'because of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even sua sponte.'" (citations omitted)); see also Hutto, 773 F.3d at 543 (observing that "a court need not raise [Eleventh Amendment immunity] on its own initiative," thereby indicating that a court is permitted to do so). And, this Court and others have held, even after Hutto, that sua sponte assessment of Eleventh Amendment immunity is appropriate. See Duncan v. W. Reg'l Jail, 3:16-cv-11100, 2017 WL 2682088, at *3-5, 3 n.1 (S.D. W. Va. May 30, 2017), adopted, 2017 WL 2676492, at *1 (S.D. W. Va. June 21, 2017); Dunkle v. Virginia, 5:16-cv-50, 2016 WL 6137002, at *2, 2 n.2 (W.D. Va. Oct. 21, 2016); Souter v. Virginia, 5:16-cv-51, 2016 WL 6137003, at *2, 2 n.3 (W.D.

Va. Oct. 21, 2016); Davidson v. Loundoun Cnty. Bd. of Supervisors, 1:16-cv-932, 2016 WL 4801617, at *9 (E.D. Va. Sept. 14, 2016); Broadnax v. United States, 3:15-cv-2460, 2015 WL 9074637, at *6-8 (S.D. W. Va. Nov. 20, 2015), adopted, 2015 WL 9008947, at *1 (S.D. W. Va. Dec. 15, 2015); Jenkins v. Kurtinitis, 14-01346, 2015 WL 1285355, at *10 (D. Md. Mar. 20, 2015).

If courts are authorized to raise the Eleventh Amendment sua sponte, it logically follows that, when courts do so, they must be permitted to assess whether the immunity applies without requiring the defendant to shoulder a burden of proof. Indeed, courts have proceeded to decide the immunity issue without imposing such a burden, even after Hutto. See, e.g., Broadnax, 2015 WL 9074637, at *6-8; Carroll v. W. Va. Reg'l Jail & Corr. Facility Auth., 3:14-17012, 2015 WL 1395886, at *2 (S.D. W. Va. Mar. 25, 2015). Of course, they must have sufficient information available to them to decide the question. But, federal case law and an inquiry into state law often readily provide it. See, e.g., Painter v. Blue Ridge Reg'l Jail Auth., 6:17-cv-34, 2017 WL 3725993, at *4-5 (W.D. Va. Aug. 29, 2017); Morris v. W. Reg'l Jail, 3:17-cv-1148, 2017 WL 4080698, at *5-7 (S.D. W. Va. Aug. 22, 2017), adopted, 2017 WL 4078129, at *1 (S.D. W. Va. Sept. 14, 2017); Duncan, 2017 WL 2682088, at *3-4; Alfaro-Garcia v. Henrico Cnty., 3:15-cv-349, 2016 WL 5388946, at *9-10 (E.D. Va. Sept. 26, 2016); Terry of the Family Parks v. Va. Dep't of Social Servs. Child

Support Enforcement Servs., 1:16-cv-568, 2016 WL 4384343, at *3-4 (E.D. Va. Aug. 17, 2016), aff'd, 672 F. App'x 281, 282 (4th Cir. 2016) (per curiam); Broadnax, 2015 WL 9074637, at *6-7.

In short, a court may raise and decide Eleventh Amendment questions sua sponte notwithstanding the burden of proof generally placed on defendants, at least where there is sufficient information to allow the court to render a decision on the matter.

C. **Dismissal on Eleventh Amendment Grounds**

As a final point, when Eleventh Amendment immunity attaches, it should result in a dismissal without prejudice. In Fleming, for example, this Court dismissed the operative complaint on Eleventh Amendment grounds. Fleming, 2016 WL 927186, at *4. The Fourth Circuit (by unpublished opinion) found no reversible error, but it held that "[t]he court's dismissal . . . should have been without prejudice" and modified the decision to that limited extent. Fleming, 671 F. App'x at 118. It cited Southern Walk at Broadlands Homeowner's Association, Inc. v. OpenBand at Broadlands, LLC, which observed that "[a] dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." Id.; S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 185 (4th Cir. 2013). Accordingly, it seems that the Fourth Circuit considers the

14

Eleventh Amendment to be jurisdictional with respect to dismissals and that district courts in this Circuit should dismiss on Eleventh Amendment grounds without prejudice. Cf. McCants v. Nat'l Collegiate Athletic Ass'n, 251 F. Supp. 3d 952, 956 (M.D.N.C. 2017) ("Several recent Fourth Circuit opinions . . . have recognized the jurisdictional characteristics of the Eleventh Amendment.").[5]

## III. Application of the Eleventh Amendment

### A. DCSE

As to DCSE, the Court concludes that it is protected by Eleventh Amendment immunity.

The first question is whether DCSE is eligible for Eleventh Amendment immunity. The Court has previously decided this exact question. In Terry of the Family Parks, the Court expressly held that the Virginia DCSE is an arm of the state and covered by the Eleventh Amendment. See Terry of the Family Parks, 2016 WL 4384343, at *3-4. Indeed, it so held based on (almost verbatim) the same arguments as those advanced by DCSE here. Compare Def. DCSE's Br. 6-7, with Def.'s

---

[5] Many decisions, however, do dismiss with prejudice based on the Eleventh Amendment. See, e.g., Kabando v. Boente, 1:17-cv-76, 2017 WL 4507471, at *2 n.7 (E.D. Va. May 31, 2017) ("[W]hen courts dismiss claims on sovereign immunity grounds, they often and appropriately do so with prejudice."), aff'd, 696 F. App'x 107, 107 (4th Cir. 2017) (per curiam) (affirming because the appellant "forfeited appellate review"). Given the Fourth Circuit's (unpublished) reasoning on the matter, however, the Court concludes that Eleventh Amendment dismissals should be without prejudice.

Mem. in Supp. of Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(5), and 12(b)(6) at 5-6, Terry of the Family Parks v. Va. Dep't of Social Servs. Child Support Enforcement Servs., 1:16-cv-568, 2016 WL 4384343 (E.D. Va. Aug. 17, 2016) (ECF No. 6-2). And, the Fourth Circuit (by unpublished opinion) affirmed "for the reasons stated by the district court," having found "no reversible error." Terry of the Family Parks, 672 F. App'x at 282. The Court therefore adopts the reasoning in Terry of the Family Parks and finds that DCSE is an arm of the state entitled to Eleventh Amendment immunity.

The second question is whether any exceptions to Eleventh Amendment immunity apply. None do. First, Congress has not abrogated Eleventh Amendment immunity here. It has done so neither as to 42 U.S.C. § 1983 nor as to any other cause of action on which Andrews could arguably rely. See Terry of the Family Parks, 2016 WL 4384343, at *4.[6] Second, Andrews has not sued any state officers for

---

[6] Andrews seems to respond to DCSE's immunity argument in a document titled "NOTICED OF CIVIL RIGHTS REMEDIES EQUALIZATION," which simply quotes 42 U.S.C. § 2000d-7. Noticed of Civil Rights Remedies Equalization *1-2. That provision reads, in relevant part: "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 [29 U.S.C.A. § 794], title IX of the Education Amendments of 1972 [20 U.S.C.A. § 1681 et seq.], the Age Discrimination Act of 1975 [42 U.S.C.A. § 6101 et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." 42 U.S.C. § 2000d-7(a)(1). He also notes, in a document titled "Final Briefs," that "because the family courts are at least partially

prospective injunctive relief. And third, as in <u>Terry of the Family Parks</u>, "there is no basis to conclude that Virginia waived its sovereign immunity." <u>See</u> <u>id.</u>[7]

Accordingly, DCSE is immunized from suit by the Eleventh Amendment.[8]

B. **The Chesterfield Jail**

As to the Chesterfield Jail, it only has raised an immunity argument with respect to an abuse of process tort claim against Chesterfield County, if the Court were to interpret Andrews' claims as against the County. Def. Chesterfield Jail's Br. 6.[9] The Court declines to so construe Andrews' claims.[10] However, the Court <u>sua</u>

---

[federally] funded, any discrimination by family courts . . . automatically waives all so-called immunity in a suit against them within federal court." Final Briefs *2. But, Andrews has alleged no conduct covered by 42 U.S.C. § 2000d-7, so that provision is inapplicable here. <u>See</u> Am. Compl. *9-10.

[7] Indeed, DCSE expressly asserts that it does not waive its immunity. Def. DCSE's Br. 7.

[8] None of the six exceptions enumerated in <u>Hutto</u> apply, either. <u>See</u> <u>Hutto</u>, 773 F.3d at 551.

[9] The Chesterfield Jail's argument invokes Virginia state sovereign immunity rather than Eleventh Amendment immunity. <u>See</u> Def. Chesterfield Jail's Br. 6. These terms are often used interchangeably, but they do differ. Eleventh Amendment immunity "addresses whether a state has consented to being sued in a federal court," whereas "a state's more general sovereign immunity bars all private suits against the state whether brought in federal or state court." <u>McCants</u>, 251 F. Supp. 3d at 956. Given the following analysis, the Court need not address any further differences.

[10] Indeed, doing so would be improper. As discussed below, it is clear

17

*sponte* raises and decides the issue of Eleventh Amendment immunity as to the Chesterfield Jail because it is clearly protected by the immunity.

Again, the first matter to resolve is whether the Chesterfield Jail is covered by the Eleventh Amendment. Courts in this Circuit have frequently and consistently held or observed that local and regional jails in Virginia are considered to be arms of the state under the Eleventh Amendment standard. See Perdue v. Penalosa, 38 F.3d 1213, at *1 (4th Cir. 1994) (table) (per curiam); Painter, 2017 WL 3725993, at *5; Morva v. W. Va. Reg'l Jail, 7:09-cv-439, 2010 WL 582713, at *2 (W.D. Va. Feb. 18, 2010); Jones v. W. Va. Reg'l Jail, 7:09-cv-458, 2010 WL 582715, at *2 (W.D. Va. Feb. 18, 2010); Anderson v. W. Va. Reg'l Jail, 7:09-cv-290, 2009 WL 2232461, at *1 (W.D. Va. July 24, 2009); Metz v. New River Valley Reg'l Jail, 7:09-cv-22, 2009 WL 825755, at *1 n.2 (W.D. Va. Mar. 27, 2009); Thorne v. Hale, 1:08-cv-601, 2009 WL 890136, at *11 (E.D. Va. Mar. 26, 2009); Aziz v. Cent. Va. Reg'l Jail, 7:04-cv-732, 2005 WL 1307964, at *2 (W.D. Va. May 31, 2005), adopted, 2005 WL 6197492, at *1 (W.D. Va. Aug. 12, 2005), aff'd, 197 F. App'x 232, 232-33 (4th Cir. 2006) (per curiam); Preval v. Reno, 57 F. Supp. 2d 307, 310 (E.D. Va. 1999), aff'd in relevant part, 203 F.3d 821, at *1 (4th Cir. 2000) (table)

---

that local and regional jails in Virginia are considered to be arms of the state. If Andrews wishes to sue the County, he is certainly entitled to bring a claim against it to the extent permitted by law.

(per curiam); Williams-El v. Dunning, 816 F. Supp. 418, 420 (E.D. Va. 1993); McCoy v. Chesapeake Corr. Ctr., 788 F. Supp. 890, 892-93 (E.D. Va. 1992). In accordance with these decisions, the Court holds that the Eleventh Amendment protects the Chesterfield Jail.[11] And, no exceptions to immunity apply for the same reasons that no exceptions applied to DCSE.

Thus, any claims against the Chesterfield Jail are barred by the Eleventh Amendment.

C. Conclusion

In sum, the Eleventh Amendment protects DCSE and the Chesterfield Jail from suit in federal court. Accordingly, the Court

---

[11] Most of the foregoing cases relied upon McCoy. There, this Court employed a test similar to the four-factor arm of the state test set forth in Lawson and performed a comprehensive assessment of Virginia local correctional facility law to reach the holding "that the degree of state involvement in the administration of a [sic] local jails in Virginia mandates that local jails be considered arms of the state" for Eleventh Amendment purposes. See McCoy, 788 F. Supp. at 892-93. A portion of its reasoning focused on the fact that "the state provides significant funding for a plan that insures employees of local jails." Id. Such reasoning is no longer valid under Fourth Circuit law. See Kitchen v. Upshaw, 286 F.3d 179, 184 (4th Cir. 2002). Nevertheless, the Fourth Circuit has since approved of the remaining reasoning in McCoy, as well as its conclusion that local and regional jails are state entities, by affirming (in an unpublished opinion) the district court's reliance on McCoy in Aziz. See Aziz, 197 F. App'x at 232-33; Aziz, 2005 WL 1307964, at *2. And, a review of the provisions of the Virginia Code governing local correctional facilities reveals that state involvement remains, as described in McCoy, fairly substantial. See, e.g., Va. Code §§ 53.1-5, 53.1-10, 53.1-68-53.1-69, 53.1-80, 53.1-83.1-53.1-85, 53.1-116-53.1-127.5; see also Va. Const. Art. VII § 4; Va. Code § 15.2-1603; McCoy, 788 F. Supp. at 892-93. The Court therefore adopts the reasoning of McCoy and its progeny to the extent not foreclosed by Kitchen.

will dismiss Andrews' Amended Complaint as to both Defendants without prejudice.

## CONCLUSION

For the foregoing reasons, the Commonwealth of Virginia, Department of Social Services, Division of Child Support Enforcement's MOTION TO DISMISS (ECF No. 9) and the Chesterfield County Jail's MOTION TO DISMISS (ECF No. 14) will be granted, but the dismissal of the Amended Complaint shall be without prejudice.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: May 7, 2018